Lisa A. Ferrari (LF8081)
COZEN O'CONNOR
277 Park Avenue
New York, New York 10172
Tel: (212) 883-4900
Fax: (646) 588-1459
Email: lferrari@cozen.com

*Attorneys for Plaintiff Kimberly Wang d/b/a Eardog Productions*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
KIMBERLY WANG d/b/a Eardog
Productions,

               Plaintiff,                             Civil Action No.

v.

FLUFF & TUFF, INC., a Michigan
corporation; CHRIS LAWSON,
individually; ELLEN LAWSON,
Individually,

               Defendants.
-----------------------------------------------------------------x

## COMPLAINT

      Plaintiff, Kimberly Wang d/b/a Eardog Productions ("Wang"), sues Defendants, Fluff &

Tuff, Inc. ("F&T"), Chris Lawson ("Mr. Lawson"), and Ellen Lawson ("Ms. Lawson"), and

alleges:

      1.     This is an action for copyright infringement brought by a professional photographer

against her former client and its principals.  The Defendants, knowing that their license agreement

expired and that they had no right to continue using photographic images, falsely represented that

they would discontinue using the images.  When it was subsequently discovered that the

Defendants' representations were false, Defendants acknowledged an obligation to pay for the use

of the images, but ultimately refused to pay in full for same.  It was also subsequently discovered

that Defendants, contrary to their representations, used Wang's images in a variety of other ways that were never authorized under any license.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over Wang's copyright claims pursuant to 28 U.S.C. § 1338(a), and over the remaining claims under 28 U.S.C. § 1367(a).

3.      Venue is proper in this district pursuant to 28 U.S.C. §1391 because the Defendants' actions resulted in harm in this District.

4.      Personal jurisdiction over Defendants exist because they have: (a) engaged in tortious acts in New York; (b) engaged in tortious acts outside of New York that caused injury in New York; (c) transacted business within New York; and (d) regularly done business in New York and upon information and belief, derived substantial revenue from goods used in New York.

## PARTIES

5.      Wang is a professional photographer who lives and works in New York, and who does business as Eardog Productions.

6.      Defendant, F&T, is a Michigan corporation with its principal place of business in Troy, Michigan.  F&T sells dog toys.  F&T has advertised its dog toys in New York, including upon information and belief, through the distribution of advertising materials in New York.  F&T also sells its toys to various pet stores in New York.

7.      Upon information and belief, Mr. Lawson is a resident of Troy, Michigan and a principal of F&T.  Upon information and belief, Mr. Lawson personally participated in the wrongful acts detailed below and/or had the ability to supervise and control the wrongful acts, including without limitation tortious acts in New York and which caused harm in New York.

2

8.     Upon information and belief, Ms. Lawson is a resident of Troy, Michigan and a principal of F&T.  Upon information and belief, Ms. Lawson personally participated in the wrongful acts detailed below and/or had the ability to supervise and control the wrongful acts, including without limitation tortious acts in New York and which caused harm in New York.

## FACTS GIVING RISE TO THIS ACTION

9.     In or about 2012, Defendants arranged for Wang to create a series of images of dogs with F&T's toys.

10.     Rather than obligating themselves ahead of time to pay for Wang's services, Defendants sent Wang a selection of F&T's toys to photograph with the understanding that if they liked the images Wang would create, they could then negotiate a license for the use of the images. Wang created the Images attached as Exhibit "1" (the "Images") and allowed Defendants to view a gallery of the Images.  Defendants selected images from the gallery, and the parties then agreed to terms for a license (the "License Agreement") that allowed F&T to use the Images subject to certain limitations.  A copy of the License Agreement is attached as Exhibit "2."

11.     Wang is the owner of the copyrights to the Images, and the Images have been submitted to the U.S. Copyright Office in connection with an application to register the copyrights for the Images.

12.     Pursuant to the License Agreement, F&T was permitted, on a non-exclusive, non-transferrable basis, to use the Images on the F&T website (www.flufffandtuff.com), up "to a maximum of 800 x 600 pixels for image or Illustration Content…", and any other uses approved in writing by Wang.  No other uses were permitted.  The term of the License Agreement was expressly stated as two years running from July 1, 2012 through July 1, 2014.

LEGAL\34072011\1

13.     In consideration for the License Agreement, F&T paid Wang $1,500 in three installments.

14.     In mid-June, 2014, Wang contacted Mr. Lawson to remind her that the License Agreement would expire July 1, 2014, and to indicate a willingness to negotiate a new license with F&T.

15.     Ms. Lawson responded the following day indicating that F&T desired to continue the License Agreement and to arrange for additional photographic work to be done.

16.     Mr. Lawson, suggesting that F&T would need additional photographic work if they could work through the license negotiations (a negotiating tactic that Mr. Lawson and Ms. Lawson would use repeatedly, namely, the promise of additional work if the parties could resolve the outstanding issues), requested an extension of the existing License Agreement.  However, when Wang presented Mr. Lawson with a quotation for a six (6) month extension to the License Agreement (to cover the period July 1, 2014 through December 2014), Mr. Lawson rejected the proposal.

17.     By early August, the parties were no closer to coming to an agreement for a new license or continuation of the License Agreement, despite the fact that F&T was continuing to use the Images throughout the course of the negotiations.

18.     Mr. Lawson ultimately stated that if they could not come to an agreement regarding a license fee, "we will remove the [Images] from the current website as soon as possible."

19.     After Wang explained via e-mail to Mr. Lawson that she had already made a series of accommodations for F&T, and could not agree to further reductions to the license fee, Ms. Lawson affirmatively represented that "I don't know how to [remove the Images from the website] myself and our graphic designer that can do so will probably will (sic) take a week I am

4

guessing to work it all out, ***but we will remove the photos from our site as soon as possible***" (emphasis added).

20.     A few hours later, Ms. Lawson sent another e-mail in which she stated "I am contacted our graphic designer and ***let him know we needed to remove and replace the photos***. He has a day job and does our work freelance, so I haven't heard from him yet, but conveyed it was time sensitive" (emphasis added).

21.     Following these communications, F&T did take down several of the Images from the F&T website.   However, other Images still remained, notwithstanding the repeated representations that the Images would be removed.

22.     It now also appears that at some point in time, F&T also started using the Images for various other uses that were never authorized under the License Agreement or any other license.

23.     In July 2017, Wang discovered that F&T was continuing to use some of the Images on the F&T website.

24.     On or about July 20, 2017, Wang contacted Ms. Lawson to confront her about the Images appearing on the F&T website.  Not only was F&T still using the Images—a violation by itself—but sometime thereafter, F&T also started using one of the Images—commonly referred to by the parties as "Buster's image"—on the landing page of the site larger (1365 x 653 pixels) than was authorized under the License Agreement which had expired years earlier.

25.     Having discovered that Mr. Lawson and Ms. Lawson had falsely represented that they would cease using the Images, Wang started to investigate the extent of the Defendants' unauthorized use of the Images.

26.     As a result, Wang also started discover evidence that F&T had used the Images for a series of other marketing and promotional uses.

27.     For instance, F&T apparently had large prints or blow-ups made of the Images, and displayed those Images at trade shows in connection with F&T's display of its products. Defendants never obtained Wang's permission to create or display such prints. Defendants had previously inquired as to the cost for a license to cover such a use of the Images, but declined to secure a license, instead stating that the quoted license fee for such usage was "too expensive."

28.     F&T apparently also incorporated the Images into printed flyers and catalogs that, upon information and belief, F&T distributed around the country. Pet stores in New York received some of these flyers/catalogs. Defendants never sought nor obtained Wang's permission to use the Images in flyers/catalogs or to distribute copies of same in New York and elsewhere.

29.     In the e-mail exchange that followed, Ms. Lawson acknowledged that the use of "Buster's image" would be subject to a separate license fee, but needed to check with Mr. Lawson to ascertain whether they would agree to pay the license fee that Wang quoted for the use.

30.     At the same time, the parties attempted to negotiate an extension of the License Agreement for F&T's use of the smaller Images on the F&T website over the preceding three (3) years. Wang offered to accept $3,900 for a continuation of the License Agreement to cover the historical usage (e.g., the usage from August 2014 to August 2017) of smaller images on the website.

31.     Instead of paying the agreed upon fee of $3,900 for a continuation of the License Agreement, F&T sent only $1,900. Thereafter, Ms. Lawson indicated that she wanted to pay only another $1,000 to resolve all outstanding issues. In a subsequent e-mail, Wang made it clear that Ms. Lawson's proposal was not acceptable.

LEGAL\34072011\1

32.     F&T sent another $1,000, which Wang applied against the $3,900 fee for the continuation of the License Agreement.  However, that left a balance due and owing by F&T of $1,000.  That balance due and owing was never paid.

33.     At the same time, Defendants continued using the Images, despite again representing that they would cease all use.

34.     Defendants never agreed to a license fee for the use of "Buster's image," and Defendants have never accounted for their various other unauthorized uses made of the Images.

35.     In late November and early December 2017, Ms. Lawson and Mr. Lawson once again expressed a feigned willingness to use Wang's services if the parties could resolve their differences.  Around the same time, Defendants started to remove additional Images from the F&T website, while leaving other Images on the website.  Ultimately, the Defendants' failed to discontinue using the Images completely, and refused to pay the license fees associated with such use.  For example, the Defendants continued to use, and as of the filing of this Complaint are still using, the Images on the F&T website, including on the F&T website's Press page: https://www.fluffandtuff.com/news/.

36.     Despite repeated requests, the Defendants have refused to disclose all uses—authorized and unauthorized—made of the Images, and refused to pay for the unauthorized use of the Images of which Wang has become aware.

## COUNT I:  COPYRIGHT INFRINGEMENT

37.     Wang re-alleges paragraphs 1 through 36 in support of this Count.

38.     Wang holds a valid copyright in the Images.  Wang's application for registration has been submitted to the United States Copyright Office and copies of the Images have been deposited with the Copyright Office.

39.    Defendants' use of the Images has exceeded the scope of the license that Wang previously granted.  This includes using the Images in sizes not authorized under the license, using the Images after the expiration of the license, and using the Images in other media and ways that were never authorized.  Wang has not granted any additional licenses to Defendants.

40.    Defendants infringed Wang's exclusive right granted by 17 U.S.C. §106 by:

      a.   reproducing the Images in copies;

      b.   distributing copies of the Images to the public; and

      c.   displaying the work publicly.

41.    As a proximate cause of Defendants' infringement, Wang has suffered and will continue to suffer damages.

42.    Accordingly, Wang is entitled to her actual damages and the Defendants' profits.

## COUNT II:  BREACH OF CONTRACT

43.    Wang re-alleged paragraphs 1 through 36 in support of this Court.

44.    Defendants reached an agreement with Wang to pay for a continuation of the License Agreement, with such continuation to cover the period August 2014 to August 2017.

45.    In connection with that agreement, Defendants paid $2,900 of the agreed upon $3,900 fee.

46.    Defendants were obligated to pay the $3,900 fee to obtain a continuation of the License Agreement.

47.    Defendants breached their obligation by failing to pay the $3,900 in full.

48.    As a proximate cause of Defendants' breach, Wang has suffered damages.

49.    Accordingly, Wang is entitled to recover damages from Defendants.

LEGAL\34072011\1

## PRAYER FOR RELIEF

WHEREFORE, Wang respectfully requests the following relief:

A. That Defendants be found to have infringed Wang's rights in the Images under 17 U.S.C. §501;

B. That Defendants, jointly and severally, be directed to pay Wang money damages and profits in accordance with 17 U.S.C. §504;

C. That Defendants be required to pay damages by virtue of their breach of agreement with Wang;

D. That Defendants, jointly and severally, be directed to pay Wang's reasonable attorneys' fees, costs and expenses incurred in connection with this action;

E. That Wang be awarded prejudgment interest on any monetary award made part of the judgment against Defendants; and

F. That Wang be awarded such additional and further relief as the Court deems just and proper.

Dated: January 18, 2018

COZEN O'CONNOR

By:     */s/ Lisa A. Ferrari*
        Lisa A. Ferrari (LF8081)
        277 Park Avenue
        New York, New York 10172
        Tel: (212) 883-4900
        Fax: (646) 588-1459
        Email: lferrari@cozen.com

        *Attorneys for Plaintiff Kimberly Wang d/b/a Eardog Productions*